_FILED  X LODGED
_RECEIVED  _ COPY

JUL 1 9 2004

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

FILED  _ LODGED
RECEIVED  _ COPY

JUN 1 8 2007

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY                   B DEPUTY

PAUL K. CHARLTON
United States Attorney
District of Arizona

PETER SEXTON
Arizona State Bar No. 011089
Assistant United States Attorney
Two Renaissance Square
40 North Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 514-7500

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

United States of America,

          Plaintiff,

    v.

Eskandar Khamooshpour
  aka Alex E. Khamooshpour
  aka Alex Eskandar Khamooshpour
  aka Hasan Khamoushpour
  aka Shahin Khamoushpour
  aka Parvin Khamoushpour
  aka Minoosh Hendesi
  aka Amir
  aka Azim
  aka Farzad Khamooshipour
  aka Mehdy Sadre
  aka Mehdi Sadr
  dba Sehaty Co.
  dba Sehaty Foreign Exchange
  dba Sehaty Exchange
  dba Sehatyis Exchange
  dba CAT Co.
  dba E. Khamooshpour Capital Services
  dba E.K.C.S,

          Defendant.

CR-01-829-PHX-PGR

PLEA AGREEMENT

(Sentencing Guidelines
Are Applicable --
Cooperation/Testimony
Required)

Plaintiff, United States of America, and defendant, ESKANDAR KHAMOOSHPOUR, with the advice and consent of defense counsel, agree to the following disposition of this matter:

CC: AUSA, Def Cnsl, USPO

**PLEA**

Defendant will plead guilty to Counts 6 and 284 of the Superseding Indictment, which charges defendant with violations of the International Emergency Economic Powers Act, and failure to report foreign financial accounts, in violation of 50 U.S.C. §§ 1701, 1702, 1704 and 1705(b), and 31 C.F.R. §§ 560.201, 560.204, 560.206 (Count 6), and 31 U.S.C. 5314, 5322(b) and 31 C.F.R. § 103.24 (Count 284); both Class C felony offenses. Defendant consents to the forfeiture allegations contained in the Superseding Indictment.

**TERMS**

Defendant understands that this guilty plea is based upon the following terms and conditions.

1. **Maximum Penalties.**

(a)    A violation of Title 50, United States Code, Sections 1701, 1702, 1704, and 1705(b) is a Class C felony punishable by a maximum fine of $250,000.00, a maximum term of imprisonment of ten (10) years, a maximum period of supervised release of three (3) years, or all three combined. A violation of Title 31, United States Code, Sections 5314 and 5322(b) is a Class C felony punishable by a maximum fine of $500,000.00, a maximum term of imprisonment of ten (10) years, a maximum period of supervised release of three (3) years, or all three combined. Because defendant is pleading to two (2) felony counts, the combined maximum penalty is a fine of $750,000.00, a maximum term of imprisonment of twenty (20) years, a maximum period of supervised release of three (3) years, or all three combined. If probation is imposed, the maximum term of probation is five (5) years.

(b)    According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall:

(1)    Order the defendant to pay a fine, which may include the costs of probation, supervised release or incarceration, unless, pursuant to Title 18, United States

2

Code 3611 and Section 5E1.2(f) of the Guidelines, the defendant establishes the applicability of the exceptions found therein;

(2)    Order the defendant, pursuant to Title 18, United States Code, Section 3583 and Section 5D1.1 and 2 of the Guidelines, to serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed, and the Court may impose a term of supervised release in all other cases.

(c)    Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a special assessment on the defendant of $100.00 per count. The special assessment is due at the time the defendant enters the plea of guilty, but in no event shall it be paid later than the time of sentencing.

2.    **Cooperation.**

The defendant will cooperate with the United States on the following terms and conditions.

(a)    Defendant will waive defendant's Fifth Amendment privilege against self-incrimination and will provide information in interviews and testify completely and truthfully at any time and any place requested by the United States, including at any state or federal grand jury proceeding, forfeiture proceeding, bond hearing, pretrial hearing, civil and criminal trial, retrial or post-trial hearing.

(b)    All such information and testimony shall be truthful, honest, candid, and complete with no knowing material false statements or omissions. Such information and testimony shall include all criminal activity known to the defendant.

(c)    Defendant will be available for interviews by Attorneys and law enforcement officers from the United States upon request and reasonable notice.

(d)    Defendant will provide the United States with all documents, records, memoranda and the like, at the request of the United States, within the defendant's custody

and control, or to which the defendant has access, which are related to the subject matter of the investigation, case or cooperation.

(e)    Defendant will neither attempt to protect any person or entity through false information or omissions, nor falsely implicate any person or entity.

(f)    Defendant will not reveal that defendant is cooperating, or any information derived there from, to any third party without prior consent from the United States Attorney's Office.

(g)    Defendant agrees to notify the United States Attorney's Office of any contacts with any co-defendants or subjects or targets of the investigation, or their counsel, and agrees to provide prior notice of, and an opportunity to be present at, any interviews between the defendant and any individual not employed by the United States regarding any matter related to this case or any other investigation.

(h)    Nothing in this agreement requires the United States to accept any cooperation or assistance the defendant may choose to proffer. The decision whether and how to use any information and/or cooperation that defendant provides is in the exclusive reasonable discretion of the United States Attorney.

(i)    Defendant will identify all assets and property subject to forfeiture. The defendant will provide all information concerning all forfeitable assets.

(j)    Self-incriminating information provided by the defendant during cooperation, obtained directly or derived, involving criminal activity for which the defendant has not been or will not be charged pursuant to paragraph 7 of this Plea Agreement, will not be used against the defendant, except as provided in paragraphs 9 and 10 below.

(k)    Nothing shall limit the United States' methods of verifying the truthfulness of defendant's statements. The United States may confirm the accuracy of any information, which the defendant provides under the terms of this agreement by use of any investigative means, which it deems appropriate and necessary. Whether there has been a complete,

truthful and candid disclosure by the defendant will be evaluated and decided by the United States Attorney for the District of Arizona and by him alone.  As part of this process, in the sole discretion of the United States, the defendant agrees to submit to a polygraph examination to verify any information the defendant may provide to the United States, including but not limited to defendant's assets. Such examination will be concluded by a polygrapher chosen and conducted in a manner determined in the sole discretion of the United States.  Neither party shall object to the admissibility in evidence of the results of such examination in any proceeding to enforce or set aside this agreement in which compliance with the terms of this agreement are in issue.

(l)      The plea of guilty shall be entered as soon as practicable.

(m)      With the Court's consent, sentencing shall be postponed until after the defendant's cooperation has been completed.

(n)      At the conclusion of defendant's cooperation, pursuant to this Plea Agreement, the United States may, at the time of sentencing, move pursuant to Title 18, United States Code, Section 3553(e), Title 28, United States Code, Section 994(n) and Sentencing Guidelines Section 5K1.1, that the Court depart from the Guidelines and impose a sentence below a level established by law as the minimum sentence, to reflect any substantial assistance the defendant may give during the investigation and prosecution.  If a non-binding recommendation is made, it will be made according to Sentencing Guidelines Section 5K1.1.

Defendant understands that while the Court may take the defendant's cooperation into account in determining the sentence to be imposed, the Court has complete discretion to impose whatever sentence it deems appropriate within the applicable guideline range.

3.      **Recommendations Regarding Sentencing.**

(a)      In addition to the possibility of a departure motion as described in 2(n) above, the United States will make a non-binding recommendation that the Court sentence the

defendant to the low end of the appropriate sentencing range. If probation is available within that range, the United States will make a non-binding recommendation of probation to the Court. If a split sentence (Zone C) is available within that range, the United States will make a non-binding recommendation that the Court impose the minimum term of confinement.

(b)    If the defendant makes a full and complete disclosure to the Probation Department of the circumstances surrounding defendant's commission of the charged offenses and related conduct, and demonstrates an acceptance of responsibility for defendant's actions by virtue of defendant's conduct up to and including the time of sentencing, the United States will, pursuant to Section 3E1.1 of the Sentencing Guidelines, make a non-binding recommendation to the sentencing Court that the Court reduce by two (2) levels the adjusted offense level applicable to this offense. If the defendant's offense level is a level sixteen (16) or greater, before factoring in any reduction for acceptance of responsibility, the United States will make a non-binding recommendation that the Court reduce by three (3) levels the adjusted offense level applicable to this offense, pursuant to Sentencing Guideline § 3E1.1(b).

(c)    Defendant understands that the United States' recommendations are not binding on the Court.

(d)    The United States retains the unrestricted right to make any and all statements it deems appropriate to the Probation Office and to make factual and legal responses to any statements made by the defendant or defense counsel or objections to the presentence report or to questions by the Court at the time of sentencing.

4.    **Stipulation Regarding Sentencing.**

(a)    Pursuant to 11(c)(1)(C), Fed.R.Crim.P., the United States and defendant stipulate that the following sentencing adjustments or factors do not apply to defendant's Guidelines calculation (using the Sentencing Guidelines Manual incorporating amendments effective November 5, 2003):

(1)   Section 3B1.3 - Use of Special Skill; and

(2)   Section 3B1.1 - Role in the Offense.

(b)   As to Count 284, involving the violation of Title 31, United States Code, Sections 5314 and 5322(b) the parties stipulate pursuant to 11(c)(1)(C), Fed. R. Crim. P., that the base offense level under Federal Sentencing Guidelines Section 2S1.3(a)(2) is six (6), with a four (4) level enhancement under Federal Sentencing Guidelines Section 2B1.1 because the average daily foreign bank account balance was at least $10,000.00 but not more than $25,000.00.

## 5.   Breach of the Agreement.

If the defendant fails to comply with any obligation or promise to this Plea Agreement, the United States:

(a)   may, in its sole discretion, declare any provision of this Plea Agreement null and void and the defendant understands that the defendant will not be permitted to withdraw the plea of guilty made in connection with this Plea Agreement;

(b)   may prosecute the defendant for any offense known to the United States for which the defendant is responsible, and defendant waives any statute of limitations, Speedy Trial Act, and constitutional restrictions for brining charges after the execution of this Plea Agreement;

(c)   may argue for a maximum statutory sentence for the offense to which defendant has pled guilty;

(d)   may use in any prosecution any information, statement, document, or evidence provided by defendant both before and after entering into this Plea Agreement, including derivative evidence;

(e)   may advise the Bureau of Prisons that defendant is no longer a cooperating witness, and recommend redesignation of defendant to a higher custodial level.

If there is a dispute regarding the obligations of the parties under this Plea Agreement, the United States District Court shall determine whether the United States or the defendant has failed to comply with this Plea Agreement, including whether the defendant has been truthful.

6.    **Right to Withdraw Plea if Plea Agreement is Rejected.**

(a)    If the Court, after reviewing this Plea Agreement, concludes that any provision is inappropriate, it may reject the Plea Agreement, giving defendant, in accordance with Fed. R. Crim. P. 11(c)(5), an opportunity to withdraw defendant's guilty plea.

(b)    Pursuant to Sentencing Guidelines Section 6B1.1(c), the Court shall defer acceptance or rejection of this Plea Agreement until there has been an opportunity to consider the Presentence Report.

7.    **Agreement to Dismiss or Not to Prosecute.**

This agreement does not, in any manner, restrict the actions of the United States in any other district nor bind any other United States Attorney's Office.  The United States Attorney for the District of Arizona agrees that it will not bring any additional charges against the defendant relating to the offenses in the Superseding Indictment, and, at sentencing, will dismiss the remaining charges in the Superseding Indictment.

8.    **Waiver of Defenses, Appeal Rights, and Jury Determination of Sentencing Adjustments.**

(a) Defendant waives any right to appeal, raise or collaterally attack any matter pertaining to this prosecution and sentence, but may appeal the sentence if it is not consistent with the terms of the plea agreement.

(b) Absent a Rule 11(c)(5) Fed. R. Crim. P. rejection of the Plea Agreement by the Court, or a violation of the terms of the Plea Agreement by the Court or the United States, defendant waives the right to withdraw, at any time, from the terms of the Plea Agreement and agrees to be sentenced according to its terms.

(c) Defendant also waives any right to have facts that the law makes essential to the punishment either (1) charged in the Superseding Indictment, (2) proven to a jury, or (3) proven beyond a reasonable doubt. The defendant explicitly consents to be sentenced pursuant to the applicable Sentencing Guidelines and to have the sentence based upon facts found by the sentencing Judge by a preponderance of the evidence.

9. **Perjury and Other False Statement Offenses or Other Offenses.**

Nothing in this Plea Agreement shall be construed to protect the defendant in any way from prosecution for perjury, false declaration or false statement, or any other offense committed by defendant after the date of this Plea Agreement. Any information, statements, documents, and evidence which defendant provides to the United States pursuant to this Plea Agreement may be used against the defendant in all such prosecutions.

10. **Reinstitution of Prosecution.**

If defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time, the United States will be free to prosecute the defendant for all charges of which it has knowledge, and any charges that have been dismissed because of this Plea Agreement will be automatically reinstated. If that occurs, defendant waives any objections, motions, or defenses based upon the Statute of Limitations, the Speedy Trial Act or constitutional restrictions in bringing of the later charges or proceedings. The defendant also agrees and understands that any statements made by defendant during cooperation or at the time of the defendant's sentencing may not be used against the defendant in any subsequent hearing, trial, or proceeding, except for impeachment, cross-examination or rebuttal of any witness, including the defendant. All other evidence derived from defendant's cooperation may be used by the United States directly against the defendant in its case-in-chief, for cross-examination or rebuttal in any hearing, trial or proceeding.

**11.    Disclosure of Information to U.S. Probation Office.**

Defendant understands the United States' obligation to provide all information in its file regarding defendant to the United States Probation Office. The defendant will cooperate fully with the United States Probation Office. Such cooperation will include truthful statements and response to any questions posed by the Probation Department.

**12.    Forfeiture, Civil, and Administrative Proceedings.**

(a)    Defendant agrees to immediately and voluntarily forfeit to the United States all of defendant's right, title and interest in those assets set forth in the indictment which are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(c), 982 and 28 U.S.C. § 2461. Those assets are:

(1)    All funds in First Union National Bank account 2030001124322, in the name of E. KHAMOOSHPOUR CAPITAL SERVICE.

(2)    All funds in PNC Bank account 80-1268-8726, in the name of E. KHAMOOSHPOUR CAPITAL SERVICE.

(3)    All funds in Wells Fargo Bank Arizona, N.A., account 046-4764505, in the name of ESKANDAR KHAMOOSHPOUR, dba E. KHAMOSSHPOUR CAPITAL SERVICE.

(4)    All funds in Wells Fargo Bank Arizona, N.A., account 067-1496693, in the name of ESKANDAR KHAMOOSHPOUR, aka ALEX E. KHAMOOSHPOUR.

(5)    All funds in Bank of America account 24345-04222, in the name of ALEX E. KHAMOOSHPOUR.

(6)    All funds in Wells Fargo Bank Arizona, N.A., account 046-4764497, in the name of ESKANDAR KHAMOOSHPOUR, dba E. KHAMOSSHPOUR CAPITAL SERVICE.

(b)      Defendant agrees that the United States can prove that the assets set forth in the paragraph above are representative of proceeds traceable to the defendant's above-stated violations, as well as property involved in the violations.

(c)      Defendant agrees to fully assist the United States in the forfeiture of the assets listed above and to take whatever steps are necessary to pass clear title to the United States, including but not limited to surrender of title and execution of any documents necessary to transfer the defendant's interest in the property to the United States.

(d)      Defendant agrees to refrain from filing a claim to the asset listed above in any civil proceeding, administrative or judicial, which may be initiated, and agrees to withdraw the claim filed in CR-01-2362-PHX-PGR and consent to dismissal of that matter.

(e)      Defendant agrees to waive the right to notice of any forfeiture proceeding involving the listed asset, and agrees to refrain from assisting others to file a claim in any such forfeiture proceeding.

(f)      Defendant agrees to consent to the forfeiture of the specific bank accounts named in the Superseding Indictment dated November 20, 2002, case number CR 01-829-PHX-PGR.

(g)      Nothing shall limit the United States' methods of verifying the truthfulness of defendant's statements.  The United States may confirm the accuracy of any information which defendant provides under the term of this Plea Agreement by use of any investigative means which it deems appropriate and necessary.  The United States Attorney's Office alone will evaluate and decide if the defendant has provided complete, truthful, and candid disclosure.

(h)      Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this court may impose upon the defendant in addition to forfeiture.

(i)      The defendant hereby agrees to the entry of a final order of forfeiture of assets prior to sentencing.

(j)    The defendant agrees to waive any claims, defenses or challenges that defendant may have to the entry of a Forfeiture Order prior to sentencing.

(k)    The defendant agrees to waive any claims, defenses or challenges arising under the Excessive Fine Clause of the Eight Amendment resulting from the forfeiture imposed as a result of this Superseding Indictment and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provided the factual basis for the forfeiture.

(l)    The defendant hereby waives the requirements of Fed. R. Crim. P. 32(d)(2) and 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this Plea Agreement, and further agrees not to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeitures on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

Further, this agreement does not preclude the United States from instituting any civil or administrative proceedings as may be appropriate now or in the future.

## FACTUAL BASIS

I understand that the essential elements of violating the Emergency Economic Powers Act in violation of Title 50, United States Code, Sections 1701, 1702, 1704, 1705(b), are as follows:

(1)    Beginning on or about January 1997, through October 2001, within the District of Arizona and elsewhere, defendant willfully violated the United States embargo of Iran;

(2)    Defendant provided a money remittance service channeling funds to and from Iran; and,

(3)    Defendant did so without a license from the Office of Foreign Assets Control.

I understand that the essential elements of failing to report a foreign financial account in violation of Title 31, United States Code, Section 5314, are as follows:

(1)    Defendant had a financial interest in, or signature authority;

(2)    Over a financial account in a foreign country;

(3)    Which account exceeded $10,000.00 in aggregate value; and,

(4)    Defendant knowingly and willfully failed to file a report (TDF 90-22.1 - Report of Foreign Bank and Financial Accounts).

I further agree that if this matter were to proceed to trial, the United States could prove the following facts beyond a reasonable doubt:

Defendant ESKANDAR KHAMOOSHPOUR was a permanent resident alien of the United States, who was born in Iran. Defendant, who has been in the money exchange business for over 18 years, resided at, and did business from, 6960 East Lowden Road, Scottsdale, Arizona and 400 East 56th Street, Apartment 3F, New York, New York.

Defendant KHAMOOSHPOUR was never licensed by the United States Treasury Department Office for Foreign Asset Controls ("OFAC"). When transferring or transmitting millions of dollars into and out of Iran, defendant never received OFAC's formal permission or approval for himself or on behalf of others to conduct any of these Iranian transfers. As a remitter of funds in New York and Arizona, defendant remitted funds without obtaining a license as a money remitter under New York and Arizona law. In both states, defendant began the licensing process, but never completed the licensing requirements. Even though he was not licensed as a money remitter under state law, defendant transferred funds from the United States into and out of Iran.

Large sums of money were transferred to Iran for individuals who did not reveal (nor did the defendant ask whether) the sums of money were for commercial purposes. For some individuals, the sums transferred over time exceeded $1,000,000.00. There were eighty-nine (89) individuals who each transferred more than $100,000.00 to or from Iran.

Many of the largest transactions to Iran were transfers to separate Iranian accounts in the names of and under the control of the very same individuals who provided defendant with the funds in the United States. During the time frame alleged in the Superseding

Indictment, no commercial banks or similar financial institutions in the United States could transfer money directly into Iran for commercial purposes.

In furtherance of these business practices, the following specific count of the Superseding Indictment is being pled to:

## COUNT 6

### (Violation of International Emergency Economic Powers Act)

The President of the United States of America, acting pursuant to the International Emergency Economic Powers Act (50 U.S.C. §§ 1701, et. seq.), issued Executive Orders No. 12957, 12959, and 13059 declaring a national emergency with respect to the actions and policies of the Government of Iran and thereby prohibiting United States persons from engaging, directly and indirectly, in virtually all trade and financial activities with respect to the Country of Iran. The United States Treasury Department Office of Foreign Asset Control promulgated, through delegated authority, the Iranian Transaction Regulations, 31 C.F.R. Part 560, implementing these orders.

The defendant violated the United States embargo with respect to the Country of Iran, by providing a money remittance service channeling funds to and from the Country of Iran. On or about the date set forth below, ESKANDAR KHAMOOSHPOUR effectuated the transmission of money to and from the Country of Iran through foreign currency exchanges and financial institutions in the Countries of Kuwait and the United Arab Emirates, without license from the Office of Foreign Assets Control, as follows:

| CT | Amount Rec'd in U.S. (Date-On or About) | Sender | Iran Recipient (Date-On or About) |
| --- | --- | --- | --- |
| 6 | $64,000.00 (09/08/98) | Javaad Bambeiichi | Saaket Company (09/12/98) |

14

In violation of Title 50, United States Code, Sections 1701, 1702, 1704, 1705(b), Title 31, Code of Federal Regulations, Sections 560.201, 560.203, 506.204, 560.206, and 560.208, Executive Orders 12957, 12959, and 13059; and Title 18, United States Code, Section 2.

## COUNT 284

### (Failure to Report Foreign Financial Accounts)

On or about July 1, 2000, in the District of Arizona, defendant ESKANDAR KHAMOOSHPOUR, who during the calendar year 1999 had a financial interest in, or signature and or other authority over a financial account in a foreign country, which account during 1999 exceeded ten thousand dollars ($10,000.00) in aggregate value, knowingly and willfully in the District of Arizona and elsewhere, failed to file a report of the same on or before June 30, 2000, as required by Title 31, United States Code, Section 5314, and by 31 Code of Federal Regulations, Section 103.24, regulations adopted pursuant to Title 31, United States Code, Section 5314.

The defendant ESKANDAR KHAMOOSHPOUR, knowingly and willfully violated Title 31, United States Code, Section 5314, and 31 Code of Federal Regulations, Section 103.24, while violating another law of the United States, that is the International Emergency Economic Powers Act, United States Code, Section 1701 et. seq.

In violation of Title 31, United States Code, Sections 5314 and 5222(b); and 31 Code of Federal Regulations, Section 103.24.

I understand that I will have to swear under oath to the accuracy of this statement, and if I should be called upon to testify about this matter in the future, any intentional material inconsistencies in my testimony may subject me to additional penalties of perjury or false swearing which may be enforced by the United States under this agreement.

## DEFENDANT'S APPROVAL AND ACCEPTANCE

I have read each of the provisions of the entire Plea Agreement with the assistance of counsel and understand its provisions.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I will be giving up my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination -- all with the assistance of counsel -- and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this Plea Agreement.

I have been advised by my attorney of the nature and elements of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence will be determined according to the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984. I understand that the Guideline range discussed with my attorney or the prosecution is not binding on the Court and is merely my attorney's or the United States's estimates.

My guilty plea is not the result of force, threats, assurances or promises other than the promises contained in this Plea Agreement. I agree to the provisions of this Plea Agreement as a voluntary act on my part, rather than at the direction of or because of the recommendation of any other person, and I agree to be bound according to its provisions.

I fully understand that, if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon

such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence may otherwise be altered.

I agree that this written Plea Agreement contains all the terms and conditions of my plea and that promises made by anyone (including my attorney), and specifically any predictions as to the applicable guideline range, which are not contained within this written Plea Agreement, are without force and effect and are null and void.

I am satisfied that my defense attorney has represented me in a very competent manner.

I am fully capable of understanding the terms and conditions of this Plea Agreement. I am not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, which would impair my ability to fully understand the terms and conditions of this Plea Agreement.

7-19-04
Date

E. _____
ESKANDAR KHAMOOSHPOUR
Defendant

## DEFENSE ATTORNEY'S APPROVAL

I have discussed this case and the Plea Agreement with my client, in detail, and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature and elements of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty

17

plea. No assurances, promises, or representations have been given to me or to the defendant by the United States or by any of its representatives which are not contained in this written agreement. I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this Plea Agreement as in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

7-14-04
Date

MICHAEL KIMERER
Attorneys for Defendant

## UNITED STATES' APPROVAL

I have reviewed this matter and the Plea Agreement. I agree on behalf of the United States that the terms and conditions set forth are appropriate and are in the best interests of justice.

PAUL K. CHARLTON
United States Attorney
District of Arizona

7/19/04
Date

PETER SEXTON
Assistant U.S. Attorneys

## COURT'S ACCEPTANCE

Date

PAUL G. ROSENBLATT
United States District Court Judge